Good morning, Your Honors. Chad Denny for Appellant Jerry Bunker. How are you? Good, how are you? Great. You know, if you want to get into the factual background or jump right into the Daubert issue or how you wanted to go forward on this. It's your case. Fair enough. The accident happens June of 2009. My client, who has a relationship with the other individual's kids, is putting the kids into a 2007 Ford Ranger. The vehicle, and that's really the question of what happened here. How did the vehicle come out of gear? It is our expert's testimony and through his report that the vehicle, there's three positions, essentially. You're locked, you're in kind of the open position where you can turn the radio on, or you're on. And what happened was it got into… I'm sorry, you're talking about the key. Yes, the key. …got into the middle position, and in the middle position, the brake does not have to be depressed for the vehicle to come out of gear. Well, the issue here, of course, is whether or not your expert was qualified under 702. Correct. And what's your position? Obviously, my position is he's qualified. He was hired by State Farm to go out there, so he was really, I guess, an unbiased individual at that time. But didn't he say that he, didn't he admit that he had no knowledge of the shift interlock system, which is the key issue here? Well, I think, I mean, maybe specifically, but what he talked about was the design flaw. He talked about when it got into that middle position… What's his expertise on design flaws? Expertise on design flaws? Well, I don't know if this one is a… Has he testified in other proceedings with respect to this particular system? I think in two others, and then in probably about 100 other ones with design-type flaws. And I think the issue here was when he looked initially, there weren't any complaints of this type of an issue. So I don't know if there's a whole universe of other issues like this that have happened. This could be a new thing where this has happened. Because I had known his initial, I think it was his second report, he did some research, and he couldn't find anything that showed that there were other problems. So this could be one of the first where we found this problem. Unfortunately, I think a child at age two, wasn't my client, was run over, had severe injuries, and my client had injuries to her shoulder. So the question is, has he had years of testimony? No, the answer is no, because we didn't know about the problem with this particular model. So it's that odd… Let's step back from the expert. How do you prove up a design defect case? How do you prove up a design defect case? I mean, you know, as I understand, design defect is a manufacturer says, look, this is a car we sold. It functioned as we designed it to function, right? Fair enough. Fair enough, I mean, that's the premise. Right. And the plaintiff wants to come back and say, well, this design is unreasonable or unsafe. Correct. And how do you prove that up? You have someone inspect the vehicle, which he did twice. He took pictures. He took measurements of the driveway. And I don't know if I mentioned this earlier, it was on the vehicle was on a driveway. If it would have been on a flat surface, again, possibly nothing would have happened. So he went out. He took measurements. He did everything he could under the circumstances. The first time, he didn't have the keys to the vehicle. And then the second time he went out there, he had the keys, so he was able to tell in that middle position, kind of where you turn the radio on, that the vehicle can come out of park without depressing the brake. And therefore, you get to a design defect. Well, that tells us how the vehicle functions. But what makes it a design defect? I mean, you know, if every other car on the road functions the same way. I don't think every other car functions that way. Well, I'm saying if. I don't think it does. Okay. You know, this is a unique situation with Ford with this particular model. Well, what makes a difference in design a design defect? What do you prove to show that it's a defect? Because it's extremely dangerous. The way it was manufactured to allow this vehicle to come out of gear in that kind of neutral or mid section, that is the dangerous part of the vehicle. But for that, if you had to push the brake, I don't think it would be a defective vehicle. You don't think. Essentially, they're trying to keep. You just said, I don't think. We have to have expert. No, no, no. I'm sorry. An expert would believe that you can't have. I'm sorry. Let me back up. What was your question? You just told me that you were arguing to us what you think. And that doesn't help us very much on a factual issue. The issue is, do we have an expert here who's qualified under 702? Has the knowledge and background and experience necessary to give an opinion? This individual had never had a case like this. He's done other things. That's fine. But it wasn't his expertise. And as a matter of fact, he didn't even come up with it until he talked to a tow truck driver. Well, he did his investigations. I mean, he didn't give up. He went back out there and figured it out. Well, maybe he didn't do any surveys, none whatsoever. He didn't do any surveys of other vehicles. There's a whole cadre of things that he could have done if he did some research on other vehicles to see if there was problems. And he came up with a few complaints, and that was it. So I don't think it's a wide-known problem on this particular model. What has been done, obviously, subsequent to that wouldn't be admissible anyway. But I imagine the problem has been remedied. I don't imagine Ford wants people getting run over. Do we know that? Do we know that? I don't, but it wouldn't be admissible anyway. Not in the record. It's not in the record. Maybe Ford believed the theory that the child is the one that pulled the thing. Who knows? If, in fact, Ford made it? Push the brake or? Who knows what happened? Do you have a final fact that makes those decisions? There's various possibilities of what happened. Of course. But the burden of proof was on your client. I understand. And my expert would test. Do you need an expert to prove a design defect case? Can you prove a design defect case without an expert? I've never tried to do one without one. So I would say yes. So then you need to have an expert that's qualified to speak about what makes something a defect rather than just a feature. Absolutely. As I understand it, the argument on the side is that there are certain benefits of having this feature, that you can do this in the middle position and that allows you towing and all sorts of. I can't see how that's a benefit as compared to what it did to my client and the 2-year-old whose head was run over. I mean, maybe there's a slight benefit, but I think the balance is on the other side, that it's a much more dangerous. You mentioned a 2-year-old whose head was run over. Is that on the record here? What? Is that on the record here, the 2-year-old whose head was run over? Is that on the record here, the 2-year-old? It's part of the case. I mean, I guess he would be a witness on some level, and then the older boy would be a witness. I don't believe he was deposed, but there's mention in it in the reports. There's mention in it in various reports. I can't remember what all. There was a statement, I believe, taken by the police, and the youngster, I can't remember how old he was at the time, maybe 8 or 9, talked to the police. I see. All right. And I'll reserve the balance of my time. Thank you, Your Honor. Okay. We'll hear from the other side. May it please the Court. Katie Richardson on behalf of Ford Motor Company. The only evidence that plaintiff presented in support of her product liability claims, and specifically in opposition to Ford's motion for summary judgment of those claims, was the testimony of her proffered expert, Thomas Lepper. As discussed at length in Ford's answering brief, Mr. Lepper lacks the requisite qualifications under Federal Rule 702 and Daubert to offer expert opinion that the 2007 Ford Rangers transmission system suffers from a design defect, a term even he was unwilling to use in both his expert report and his deposition testimony. Mr. Lepper's opinions also lack the requisite reliability to establish admissibility. That being so, the district court properly granted both Ford's motions to exclude Mr. Lepper's opinions and for summary judgment. Turning first to the motion to exclude, the district court did not abuse its discretion in granting Ford's motion. Rule 702 requires that an expert be qualified by knowledge, skill, experience, training, or education, and that his opinions be the product of reliable principles and methods. Mr. Lepper is simply not qualified to offer expert opinion concerning brake shift interlock systems, the allegedly defective vehicle component at issue in this case. Well, but the claim here is not that this was a defective system. The claim is that this is a defective design. He's not saying the system, the brake interlock system, malfunctioned. For that, he'd have to know something about the system. What he's saying is vehicles that are able to move from park to reverse, or I think it was reverse in this case, out of park without pressing down the brake pedal are inherently unsafe. There's no justification for having that feature. There's no safety justification for having that feature, and, therefore, it's a design defect. You don't have to understand how the interlock system works. You don't have to understand the mechanics of that to be able to speak to that issue, do you? I would disagree, Your Honor. I think that an expert qualified to offer expert opinion that a certain component of a vehicle has been defectively designed would need to know about the design of that vehicle and how it operates. And in this case ---- I'm sorry. You just said something different. You originally said that they have to know how the interlock system operates. You now said you have to know how the vehicle operates. Those are very different concepts. He may very well know how the vehicle operates without knowing the mechanics of the interlock system. So which one are you arguing? I think I said a vehicle component, but I apologize if I misspoke. I'm specifically referring to the brake shift interlock system. Why does he have to know how the brake shift interlock system works to be able to express an opinion about whether it's a design defect? Why does he have to know the mechanics of how it works? Isn't it enough that he knows that, look, when you have this sequence of moves, you turn the ignition to the middle position. You can then shift out of park without hitting the brake. That is so far out of the mainstream of how vehicles are designed that it's a design defect. Why does it matter to know how the actual mechanics work? I think they're related concepts, Your Honor. To understand how a vehicle component, in this case the brake shift interlock operates, facilitates understanding whether or not the design is defective. Why? I mean, I don't understand how – I mean, I couldn't tell you how the interlock system works, but I have an opinion as to whether or not it's – I may not be an expert, but I don't need to know how the interlock system works to be able to tell whether or not this is a design that's safe or unsafe. Well, in this case – There's no claim here – Ford doesn't claim that they couldn't have designed the system to always require the brake pedal to be depressed in order to shift out of park, right? Correct. Ford's not arguing that it couldn't. If that were the argument, you'd say, well, you'd have to understand how these systems work and why Ford's argument that they couldn't do it is right. But, you know, it's essentially a black box. You don't need to know how it works to know the effect. I just don't see where his familiarity with how interlock systems work have any bearing at all on the question of design defect. I mean, you tell me this, but I don't get it. Well, even if we focus, Your Honor, just on design defect, and you seem to be distinguishing between operation and design, and that's fine, then – You think that a design defect is not a different animal from an operational defect? Saying that a part malfunctioned designed to do one thing and then it didn't work is – as opposed to saying it worked as it was supposed to work, but that is an unsafe design. You don't think those are two different concepts? Very different claims? To an extent. I mean, we're not talking about an operational defect. We're talking about a design defect. Well, you said I seem to distinguish between the two as if I was wrong about that. I mean, isn't that exactly the difference that is operative here? Well, there is a distinction between how the vehicle was operated and how it was designed. I agree with that. What I'm saying is that in order for Mr. Lepper to opine that there was a defect in the design of the brake-shift interlock would necessitate some sort of understanding of the way the system is designed and how it functions. I know that's what you're saying. You've now said it three times, but what you haven't done is you haven't explained to me why. Why do you have to know how the system works in order to be able to say whether the design is unsafe? Unless you're claiming that it couldn't be designed the way plaintiff claims. I mean, if that's, you know, if Ford is saying, look, we couldn't do it because it's technically impossible. But you're not making that claim. So why does he have to know how the interlock system operates? My answer would be that it's part and parcel of understanding the full scope of the design of the component and opining as to whether or not that vehicle component is defective. You say that, and you cite for that a case? What do you cite in support of that? Your Honor, I don't have any direct authority that says in order to give expert opinion. I'll take indirect authority. Do you have indirect authority? Oh, I'm sorry. I do not have any authority on point as to whether or not. Okay, then persuade me. Then your lawyer, persuade me. Why do you have to know how the mechanics of the system to be able to say, look, when a vehicle does this thing, when a vehicle acts in this way. I mean, let's say, for example, that the vehicle, you didn't know anything about the way the vehicle works, but one out of 15 times when he hit the brake, it didn't work. It didn't stop the vehicle. Do you have to be an expert in knowing how brakes operate to be able to say that's an unsafe design? And Ford says, I mean the company, not Ford, Ford wouldn't do this, but let's say the company says, we just designed it that once out of the 15 times, the brakes don't work. Do you have to know how the actual mechanics of the brakes are? Do you have to know about hydraulic systems and brake pads and rotors and all those things to be able to say that's an unsafe design? Your Honor. You just answered my question. My answer would be no, not directly. But here we have. You wouldn't have to know anything about how brakes operate to be able to say if a car doesn't stop one out of 15 times when you hit the brakes, that's an unsafe design. Right? You wouldn't have to know anything about how brakes operate. You wouldn't have to know about hydraulic systems, about brake pads, about anything else. Right? Correct. So how is this case different? Because we're dealing with a specific vehicle component with which the Crawford expert had no background, no experience or training, employment in the design, development, or testing. This is somebody who knows vehicles. He's dealt with many more vehicles than any of us, and he's assessed vehicles. He says, look, I deal with vehicles all the time. I've seen how they operate. I know what other manufacturers do. And by, you know, overwhelming margin, I'm sort of paraphrasing what he's saying, but the claim is other manufacturers have put thousands and hundreds of thousands of cars on the road, have a feature that says you've got to hit the brake before you put it out of park into reverse. And the reason they do that is that it's unsafe. Shifting a car into reverse without having the brake on means it can start moving on its own and hit somebody. So that's an unsafe design. Why isn't his knowledge of cars and having dealt with vehicles, having inspected vehicles, having made assessments, why isn't that enough? Because the law simply under Dauber and Kumho Tire and Lust v. Merrill Dow, that general knowledge, and we're not disputing that Mr. Lepper might have knowledge and experience generally in the automotive industry, but that doesn't render him qualified to offer specific opinions concerning the design of the Ranger's brake shift interlock in this case. As the district court found, he has no training, education, experience, or expertise specifically related to brake shift interlock systems. He's never been employed by an auto manufacturer or a company that makes automatic transmissions or their control systems. He's never been employed as a design engineer, development engineer, test engineer for automatic transmissions or their designs. He was unfamiliar with the history of the development of the brake shift interlock system, specifically why it was developed. He had conducted no surveys to determine whether or not there were other vehicles manufactured with a similar or designed, rather, with a similar five-position ignition with brake shift interlock as the 2007 Ranger. Does he have to have a survey? Why can't he speak from his own experience? Because he doesn't have any experience with brake shift interlock systems. So it would behoove him, at a minimum, to investigate what others in the engineering community are doing to determine whether vehicle components are defective by design or not, and he didn't engage in any of that conduct. He also was admitted to having only little familiarity with the federal motor vehicle safety standards and did not know whether the FMVSS required a brake shift interlock system as of the 2007 model year. Notably, Mr. Lepper has also never been qualified as an expert witness in federal court. The most that — Well, you know, everybody has to start somewhere, right? That's true, Your Honor. If having no prior experience meant you couldn't be an expert, then nobody would ever become an expert, right? I agree. I'm just highlighting it as a factor for the court's consideration. You just thought I'd throw it in because it doesn't matter, right? Pardon? You just thought you'd throw it in because it doesn't matter. I don't think it doesn't matter. I think it's a factor for consideration in terms of whether or not this witness is — proffered witness is qualified to offer expert opinion on the subject vehicle component. The plaintiff in this case does no more than describe the general characteristics or experience of Mr. Lepper. And again, the district court had all of that evidence before it in concluding that Mr. Lepper was not qualified to offer expert opinion testimony. Mr. Lepper's opinions are also inadmissible because they are not based on a reliable methodology. How about the negligence claim? I'm sorry, Your Honor? They have a negligence claim, negligence, failure to inspect and warrant breach of implied warranty. Why didn't the district court err on that one? Why is it — what? Why didn't the district court err in finding there's no tribal issue effect on that? The district court did not err on any of plaintiff's negligence claims, breach of warranty, or even the misrepresentation, because all of those claims require evidence of causation. And in the absence of the properly excluded testimony of Mr. Lepper, there is simply no evidence creating a genuine dispute of material fact as to causation, which is an essential element for all of plaintiff's claims. And as the Supreme Court held in its Celotex decision, the complete absence of proof as to an essential element of a nonmoving party's case necessarily renders all other facts disputed or otherwise immaterial. So the district court properly granted summary judgment in Ford's favor. And the district court, well, with respect to the misrepresentation claim, also noted correctly that there's no evidence of reliance, which is also an essential element of the plaintiff's claim. I would just point out also that with respect to the reliability of plaintiff's expert's testimony, plaintiff offers two arguments as to why Mr. Lepper's testimony is reliable, specifically referring to two inspections that he conducted, only one of which involved actually manipulating the gear shift lever in the vehicle. And the fact that those inspections took place does not in and of themselves establish the reliability of his opinions, because they don't form the basis of any methodology he employed in reaching his conclusions. Though not binding on this Court, plaintiff cites to a Seventh Circuit case Clark v. Takada that actually supports Ford's position here. In that case, the Seventh Circuit affirmed a district court's exclusion of expert testimony. I see I'm out of time. Thank you, Your Honor. Roberts. You have some time left. I have nothing further to add, Your Honor, unless you have any questions. Okay. The case is argued. We'll stand submitted. We're adjourned.
judges: Wallace, Kozinski, O'Scannlain